1  Mike Arias, Esq. (CA Bar No. 115385)
   marias@aogllp.com
2  Denis M. Delja, Esq. (CA Bar No. 256126)
   dmdelja@aogllp.com
3  **ARIAS, OZZELLO & GIGNAC, LLP**
   6701 Center Drive West, 14th Floor
4  Los Angeles, California 90045-1558
   Telephone: (310) 670-1600
5  Facsimile: (310) 670-1231

6  Karl S. Kronenberger (CA Bar No. 226112)
   karl@KRInternetLaw.com
7  Jeffrey M. Rosenfeld (CA Bar No. 222187)
   jeff@KRInternetLaw.com
8  **KRONENBERGER ROSENFELD, LLP**
   150 Post Street, Suite 520
9  San Francisco, CA 94108
   Telephone: (415) 955-1155
10 Facsimile: (415) 955-1158

11 Attorneys for Plaintiffs and
   the Putative Plaintiff Class
12

13            **UNITED STATES DISTRICT COURT**

14            **CENTRAL DISTRICT OF CALIFORNIA**

15

16 **ANITA WHITE; DEBORAH**              Case No.: 2:11-cv-06738-CBM-FFM
   **DEFFENBAUGH;** and **DANNIE**
17 **BRASWELL,** individually and on     **CLASS ACTION**
   behalf of all similarly situated persons,
18                                       **FIRST AMENDED COMPLAINT**
               Plaintiffs,               **FOR:**
19
            vs.
20                                       1) **VIOLATION OF THE**
   **EDEBITPAY, L.L.C.,** a Nevada          **ELECTRONIC**
21 corporation; **PLATINUM ONLINE**         **COMMUNICATIONS**
   **GROUP, LLC,** a California             **PRIVACY ACT (18 U.S.C.**
22 corporation; **DALE PAUL**               **§§2510,** *et seq.***;**
   **CLEVELAND,** an individual;
23 **WILLIAM RICHARD WILSON,** an        2) **VIOLATION OF THE**
   individual; **DIRECT BENEFITS**          **ELECTRONIC FUNDS**
24 **GROUP, LLC (d/b/a UNIFIED**            **TRANSFER ACT (15 U.S.C.**
   **SAVINGS),** a Wyoming Corporation;     **§1693,** *et seq.***);**
25 and DOES 1 through 100, inclusive;
   **LANDMARK CLEARING, INC.,** a       3) **VIOLATION OF THE**
26 Texas corporation; and **FIRST BANK**    **CALIFORNIA CONSUMERS**
   **OF DELAWARE,** a Delaware             **LEGAL REMEDIES ACT**
27 corporation,                            **(CAL. CIV. CODE §§1750,** *et*
                                           *seq.***);**
28             Defendants.

---

4) **VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (CAL. BUS. AND PROF. CODE §§17200, et seq.);**

5) **NEGLIGENCE;**

6) **CONVERSION AND AIDING AND ABETTING;**

7) **FRAUD AND DECEIT;**

8) **INVASION OF PRIVACY.**

**JURY TRIAL DEMAND**

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1331 because this matter involves a federal question, namely, violations of 18 U.S.C. §§2510, et seq., and 15 U.S.C. §§1693, et seq. Jurisdiction is also conferred on this Court by 28 U.S.C. §1332(d), as amended by the Class Action Fairness Act of 2005. In addition, under 28 U.S.C. §1367, this Court may exercise supplemental jurisdiction over the state law claims because all of the claims are derived from a common nucleus of operative facts, such that Plaintiffs ordinarily would expect to try them in one judicial proceeding.

2. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) and §1446(a) because one or more of the defendants transacts substantial business within, and is subject to personal jurisdiction in, this judicial district and a substantial part of the events giving rise to the claims asserted herein took place in this judicial district.

## NATURE OF THE ACTION

3. All allegations in this Complaint are based upon information and belief except for those allegations which pertain to the Plaintiffs named herein and their counsel. Each allegation in this Complaint either has evidentiary

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

1  support or, pursuant to Federal Rules of Civil Procedure 8(e)(2) and 11(b)(3),

2  is likely to have evidentiary support after a reasonable opportunity for further

3  investigation and discovery.

4      4.    Defendants EDebitPay, L.L.C.; Platinum Online Group, LLC; Dale

5  Paul Cleveland, and William Richard Wilson (collectively, the "EDebitPay

6  Defendants") and Direct Benefits Group, LLC operate separate but similar Internet

7  schemes that prey on consumers applying for short term loans through payday loan

8  websites.  The EDebitPay Defendants and Direct Benefits Group, LLC unlawfully

9  obtain the applicants' banking information and use this information to forge checks

10  from the applicants' checking accounts in sums of approximately $99.

11      5.    The $99 withdrawals are purportedly for membership fees for online

12  savings or coupon clubs, though no applicant ever agreed to buy such services.

13  The money is taken from the applicants' checking accounts before they realize that

14  the forged checks have been drafted or that withdrawals have been made.  The

15  EDebitPay Defendants and Direct Benefits Group, LLC have performed this scam

16  thousands of times and robbed people in a frail financial condition of their

17  remaining money.

18      6.    Additionally, many applicants do not have the funds available in their

19  checking accounts to pay for the unauthorized and unanticipated $99 withdrawal.

20  As a result, many forged checks are returned for insufficient funds, which causes

21  the applicants to incur penalties and fees from their banks.

22      7.    Landmark Clearing, Inc. provided payment processing services for

23  the EDebitPay Defendants and Direct Benefits Group, LLC.  Under this

24  arrangement, the EDebitPay Defendants and Direct Benefits Group, LLC

25  provided Landmark Clearing, Inc. with the unlawfully obtained applicant account

26  information, and Landmark Clearing, Inc. generated and deposited the forged

27  checks.

28  / / /

**FIRST AMENDED COMPLAINT**

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

8.      First Bank of Delaware served as a depository bank for Landmark Clearing, Inc. and accepted the checks forged by the EDebitPay Defendants, Direct Benefits Group, LLC, and their accomplice, Landmark Clearing, Inc. First Bank of Delaware provided material assistance to these Defendants even though it knew or should have known that the other Defendants were engaging in wrongful and unlawful conduct.

9.      Plaintiffs White, Deffenbaugh, and Braswell are but three of victims of Defendants' schemes. Thousands of other similarly situated consumers who applied for a loan on a payday loan website have had their personal and banking information unlawfully obtained by Defendants, and have had funds withdrawn from their accounts by Defendants.

### THE PARTIES

**A.   Plaintiffs**

10.     Plaintiff Anita White is and at all times relevant was an individual residing in Pasadena, California, and a senior citizen over the age of 65.

11.     Plaintiff Deborah Deffenbaugh is an individual residing in San Francisco, CA.

12.     Plaintiff Dannie Braswell is an individual residing in Newton, TX.

**B.   Defendants**

13.     Defendant EDebitPay, L.L.C. ("EDP") is and/or at all relevant times was:

    a.      A business entity created under Nevada law with its principal place of business located at 15165 Ventura Blvd., Suite 200, Sherman Oaks, CA 91403; and

    b.      Licensed to conduct and actually conducting business in California as an online affiliate and marketing service provider of financially oriented products and services.

/ / /

**FIRST AMENDED COMPLAINT**

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

1    14.    Defendant Platinum Online Group, LLC ("Platinum") is and/or at

2    all relevant times was:

       a.    A business entity created under California law with its

           principal place of business located at 15165 Ventura Blvd.,

           Suite 200, Sherman Oaks, CA 91403;

       b.    A wholly owned subsidiary of Defendant EDP; and

       c.    Transacting business in California.

  15.    Defendant Dale Paul Cleveland is and/or at all relevant times was:

       a.    A principal, member, manager, president, and the majority

           owner of both Defendants EDP and Platinum;

       b.    An individual who resides in and transacts or has transacted

           business in California; and

       c.    An individual who, acting alone or in concert with others,

           formulated, directed, controlled, or participated in the acts

           and practices of Defendants EDP and Platinum as alleged in

           this Complaint.

  16.    Defendant William Richard Wilson is and/or at all relevant times

was:

       a.    A principal and managing member of both Defendants EDP

           and Platinum;

       b.    An individual who resides in and transacts or has transacted

           business in California; and

       c.    An individual who, acting alone or in concert with others,

           formulated, directed, controlled, or participated in the acts

           and practices of Defendants EDP and Platinum as alleged in

           this Complaint.

/ / /

/ / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

17.     Defendant Direct Benefits Group, LLC ("DBG") is and/or at all relevant times was:

    a.    A business entity created under Wyoming law with offices in Evanston, Wyoming and Bluffdale, Utah;

    b.    Transacting business under the name "Unified Savings"; and

    c.    Transacting business in California.

18.     Defendant Landmark Clearing, Inc. ("Landmark") is and/or at all relevant times was:

    a.    A business entity created under Texas law with its  principal place of business located at 5340 Legacy Drive, Suite 204, Plano, TX 75024; and

    b.    Transacting business in California.

19.     Defendant First Bank of Delaware is and/or at all relevant times was:

    a.    A Delaware corporation and a Delaware chartered bank based in Wilmington, Delaware; and

    b.    Transacting business in California.

20.     Plaintiffs are unaware of the true names, identities and capacities of the Defendants sued herein as DOES 1 through 100. Plaintiffs will amend this Complaint to allege the true names and capacities of DOES 1 through 100 when ascertained. Plaintiffs are informed and believe, and thereupon allege, that each of the Defendants sued herein as a DOE is legally responsible in some manner for the events and happenings set forth herein and has proximately caused injuries and damages to Plaintiffs as set forth below.

21.     Whenever, in this Complaint, reference is made to any act, deed or conduct of Defendants, the allegation means that Defendants engaged in the act, deed or conduct by or through one or more of their officers, directors, agents, employees or representatives who was actively engaged in the

**FIRST AMENDED COMPLAINT**

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

1   management, direction, control or transaction of the ordinary business and
2   affairs of Defendants.

## COMMON ENTERPRISE

3
4   22.   The EDebitPay Defendants have operated together as a common
5   enterprise while engaging in the unfair and deceptive acts and practices alleged
6   below. The EDebitPay Defendants have conducted the business practices
7   described below through an interrelated network of companies with common
8   ownership, officers, managers, employees, locations, and business functions.
9   Individual Defendants Cleveland and Wilson have formulated, directed, and/or
10  controlled, or had authority to control, or participated in the acts and practices
11  of Defendants EDP and Platinum that comprise the common enterprise.
12  Because the EDebitPay Defendants acted as a common enterprise, each of
13  them is jointly and severally liable for the unfair and deceptive acts and
14  practices alleged below.  The common enterprise transacts or has transacted
15  business in this district, and a substantial part of the events or omissions giving
16  rise to the claims asserted herein have occurred in this district.

## ALTER EGO ALLEGATIONS

17
18  23.   Defendant Platinum is, and/or at all relevant times was, a mere
19  shell without capital, assets, stock, or stockholders.

20  24.   Defendant Platinum is, and/or at all relevant times was, the alter
21  ego of Defendants EDP, Cleveland, Wilson, and/or Defendant DOES 1 through
22  100, inclusive, and each of them, who were the controlling shareholders,
23  officers, directors or partners of Defendant Platinum.

24  25.   There is, and at all relevant times was, a unity of interest and/or
25  ownership between all of these Defendants so that any individuality or
26  separateness between them has ceased to exist in that Defendant Platinum is
27  and was under their control and domination.

28  ///

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

26.     Defendant Platinum is, and at all relevant times was, completely controlled, dominated, managed and operated by Defendants EDP, Cleveland, Wilson, and/or Defendant DOES 1 through 100, so that Defendant Platinum was a mere shell, instrumentality and/or conduit through which each of these Defendants conducted some or all of their/its business.   Adherence to the fiction of the separate existence of Defendant Platinum as an entity distinct from Defendant EDP, Cleveland, Wilson, and/or Defendant Does 1 through 100, would permit an abuse of the corporate privilege and sanction fraud or promote injustice in that, among other things, it would enable each of these Defendants to avoid liability and to defraud his, her or its creditors, the effect of which would be to render each Defendant financially unable to respond to a monetary judgment awarded against each or any of them in this action.

## CLASS ALLEGATIONS

27.     Plaintiffs bring this action on behalf of themselves and all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiffs seeks to represent a nationwide class ("the Class") defined as follows:

> All persons whose checking accounts were drawn on by way of remotely created checks payable to the EDebitPay Defendants or Defendant DBG and who did not consent to the creation of a remotely created check.

28.     Subject to confirmation, clarification and/or modification based on discovery to be conducted in this action, Plaintiffs also seeks to represent a California resident subclass ("the California Subclass") defined as follows:

> All persons in California whose checking accounts were drawn on by way of remotely created checks payable to the EDebitPay Defendants or Defendant DBG and who did not consent to the creation of a remotely created check.

**FIRST AMENDED COMPLAINT**

29.     As used herein, "Class Members" shall mean and refer to the members of the Class and/or the members of the California Subclass.

30.     The Class is comprised of thousands of persons geographically dispersed throughout the United States, the joinder of whom in one action is impracticable under Federal Rule of Civil Procedure 23(a)(1), and the disposition of their claims in a class action will provide substantial benefits to both the parties and the Court.

31.     Members of the Class can be identified through Defendants' internal databases and documents.  Defendants' demand drafts, which they created and issued to consumers' banks, contain each consumer's name, address and bank account information.  Thus, the name and address of each Class Member is readily identifiable, and the Class Members can be located and notified of the specificity of the pendency of this action using techniques and a form of notice customarily used in class action litigation.

32.     Plaintiffs' claims are typical of the members of the Class as a whole under Federal Rule of Civil Procedure 23(a)(3) because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendants.  Each Class Member applied for a short term loan online.  Each Class Member was debited for an unrelated product without their express informed consent, sustaining damage as a result of Defendants' wrongful conduct in violation of federal and state statutes, as well as general principles of equity and fair play.

33.     Plaintiffs will fairly and adequately protect the members of the Class as required by Federal Rule of Civil Procedure 23(a)(4) as they have retained competent counsel who are experienced in federal and state class action claims such as those asserted in this case.

34.     A class action is superior to all other methods for the just, fair, and efficient adjudication of this controversy under Federal Rule of Civil

FIRST AMENDED COMPLAINT

Procedure 23(b)(3) since joinder of all members is impracticable. Furthermore, the damages suffered by individual Class Members are not sufficient to justify the enormous cost associated with the prosecution of individual litigation of their claims. The expense and burden posed by such individual litigation make it impossible for the Class Members to individually redress the wrong done to them, nor would such an individual case be adequate to ensure that such practices cease to harm others. Further, there will be no difficulty in the management of this action as a class action.

35. Common questions of law and fact exist as to the class members, as required by Federal Rule of Civil Procedure 23(a)(2), and predominate over any questions that affect only individual class members within the meaning of Federal Rule of Civil Procedure 23(b)(3). Among such common questions of law and fact are the following:

a. Whether Defendants used the Class Members' information to draft remotely created checks;

b. Whether Defendants drafted remotely created checks without the Class Members' express informed consent;

c. Whether Defendants debited Class Members' bank accounts for unrelated products or services without their express consent;

d. Whether Defendants intercepted, used, and/or disclosed the personal information that Class Members submitted to the payday loan website operators, in violation of the Electronic Communications Privacy Act, 18 U.S.C. §§2510, *et seq.*;

e. Whether Defendants made electronic funds transfers from the Class Members' bank accounts without written authorization to do so, in violation of the Electronic Funds and Transfer Act, 15 U.S.C. §§1693, *et seq.*;

**FIRST AMENDED COMPLAINT**

f.  Whether the conduct of the EDebitPay Defendants and Defendant DBG violated the California Consumers Legal Remedies Act, CAL. CIV. CODE §§1750, *et seq.*;

g.  Whether the conduct of the EDebitPay Defendants and Defendant DBG violated the California Unfair Competition Law, CAL. BUS. AND PROF. CODE §§17200, *et seq.*;

h.  Whether Defendant Landmark knew or should have known of the EDebitPay Defendants' and Defendant DBG's misconduct;

i.  Whether Defendant Landmark provided the EDebitPay Defendants and Defendant DBG with substantial assistance in carrying out their misconduct;

j.  Whether Defendant First Bank of Delaware knew or should have known of the EDebitPay Defendants', Defendant DBG's, and Defendant Landmark's misconduct; and

k.  Whether Defendant First Bank of Delaware provided the EDebitPay Defendants, Defendant DBG, and Defendant Landmark with substantial assistance in carrying out their misconduct.

36.  Plaintiffs are unaware of any difficulty in the management of this litigation that would preclude its maintenance as a class action.

## BACKGROUND ALLEGATIONS

**A.   Remotely Created Checks and Their Use in Fraudulent Schemes**

37.  A remotely created check, also known as a demand draft, is a unique type of check that is created by the payee (*i.e.*, the person receiving the funds), that is drawn on bank account of the payor's (*i.e.*, the person paying the fund), and that does not bear the signature of the payor. In place of the signature of the payor, a remotely created check typically bears the payor's printed or typed name

**FIRST AMENDED COMPLAINT**

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

1  or a statement that the payor has authorized the check.

2      38.    By way of example, copies of two of the unauthorized remotely

3  created checks that were generated by the EDebitPay Defendants and Defendant

4  DBG drawing on Plaintiff White's checking account are attached as Exhibits "A"

5  and "B".

6      39.    A remotely created check can be lawfully created when the holder of

7  a checking account (the payor) authorizes a payee to draft a check on the payor's

8  account. Thus, with the payor's authorization, the payee may lawfully create a

9  remotely created check payable to itself. Instead of obtaining the payor's actual

10  signature on the check, the payee inserts the statement that the payor has authorized

11  the remotely created check. The payee then deposits the remotely created check in

12  the payee's bank account.

13      40.    Payees can also hire payment processors to generate remotely created

14  checks. The payee sends the payor's personal and bank account information to the

15  processor, which then creates the check, deposits it with the processor's bank, and

16  transfers the funds to the payee after deducting a processing fee.

17      41.    After evaluating the authenticity of the check, the depositary bank for

18  the person or entity depositing the check (either the payee or a processor) sends

19  the remotely created check to the payor's bank for settlement. If the payor's bank

20  accepts the check, it withdraws the funds identified in the check from the payor's

21  account and transfers the funds to the depositary bank. The depositary bank, in

22  turn, will deposit those funds in the account of the person or entity that deposited

23  the check. All of these steps occur before the payor sees the remotely created

24  check or knows that a withdrawal has been made from his or her bank account.

25  / / /

26  / / /

27  / / /

28  / / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

42. Remotely created checks are particularly vulnerable to fraud for numerous reasons, including that fact that:

    a.    They are not drafted by the payor;

    b.    They do not bear the payor's signature or other readily verifiable indication of authorization;

    c.    The funds can be withdrawn from the payor's account before the payor knows that the remotely created check was drafted;

    d.    They are easy to create; and

    e.    A potential forger does not need special access to the banking system, as is the case with ACH transactions.

43. The risk of fraud associated with remotely created checks has been recognized for over 15 years. In 1996, the Federal Trade Commission ("FTC") warned that remotely created checks are "the favorite method of fraudulent actors for taking consumers' money through fraudulent telemarketing and other scams." *See* Jodie Bernstein, Director of the FTC Bureau of Consumer Protection, "Demand Draft Fraud", Prepared Statement to the House Banking Committee (April 15, 1996), available at http://www.ftc.gov/speeches/other/ddraft.shtm.

44. That same year, California was one of the first states to "establish rules governing 'demand drafts' and to specify liability for unauthorized demand drafts." *See* Sen. Bill No. 1742 (1995-1996 Reg. Sess.) ("SB 1742"). The legislative history of SB 1742 noted the growing "use of demand drafts by telemarketing fraud operators," and the legislation modified the California Commercial Code to shift the risk of loss from unauthorized demand drafts from the payor bank to the depositary bank. The rationale for this risk-shifting was that "[t]he depository bank, which is charged with knowing its customer, is in the best position to avoid the introduction into the check collection system of an unauthorized demand draft by scrutinizing the customers allowed to deposit those drafts."

ARIAS, OZZELLO & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

FIRST AMENDED COMPLAINT

45. In 2004, remotely created checks were banned in Canada by the Canadian Payments Association due to the high levels of fraud associated with them. *See* Canadian Payments Association Policy Statement, "Prohibition of Tele-cheques in the Clearing & Settlement System" (June 1, 2003), available at http://www.cdnpay.ca/imis15/eng/res/pr/tele.aspx.

46. In March of 2005, the Federal Reserve submitted a request for comments on proposed regulations governing the use of remotely created checks after acknowledging that they "are vulnerable to fraud because they do not bear a signature or other readily verifiable indication of authorization" and that "there have been significant consumer and bank complaints identifying cases of alleged fraud using remotely created checks." *See* Federal Reserve Release and attached Federal Register notice (March 1, 2005), available at http://www.federalreserve.gov/boarddocs/press/bcreg/2005/200503012/attachment .pdf.

47. In response to the Federal Reserve's request for comments, the Attorneys General of thirty-five states (including California) and the District of Columbia stated their "position that demand drafts are frequently used to perpetrate fraud on consumers" and "that such drafts should be eliminated in favor of electronic funds transfers that can serve the same payment function." *See* Letter from National Association of Attorneys General to the Board of Governors of the Federal Reserve System (May 9, 2005), available at http://www.federalreserve.gov/SECRS/2005/May/20050512/R-1226/R-1226_264_1.pdf.

48. Despite regulations on the use of remotely created checks, scam artists have continued to find them to be an invaluable tool in perpetrating their fraud. *See, e.g.*, Charles Duhigg, *Bilking the Elderly, With a Corporate Assist*, N.Y. TIMES, May 20, 2007, available at http://www.nytimes.com/2007/05/20/business/20tele.html?_r=1

**FIRST AMENDED COMPLAINT**

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

**B.     The FTC Action against Defendants EDP, Cleveland, and Wilson**

49.    With the rise of the Internet came the advent of online fraud. As with telemarketer scam artists before them, online swindlers use remotely created checks to gain unauthorized access to their victims' bank accounts.

50.    The EDebitPay Defendants, in particular, have a documented history of defrauding consumers through online schemes and the use of remotely created checks. In July of 2007, the FTC filed a Complaint for Injunctive and Other Equitable Relief against Defendants EDP, Cleveland, and Wilson to stop them from unlawfully debiting consumers $159.95 for prepaid Visa and MasterCard cards without their express informed consent. *FTC v. EDebitPay, LLC, et al.,* Case No. CV 07-4880 (C.D. Cal.).

51.    In January of 2008, the United States District Court for the Central District of California entered a Final Order for Permanent Injunction and Monetary Relief (the "Injunction"). According to the terms of the Injunction, Defendants EDP, Cleveland, and Wilson were restrained and enjoined from, directly or indirectly, doing any of the following:

    a.    Debiting, or causing to be debited, consumers' bank accounts without their expressed informed consent;

    b.    Misrepresenting, or assisting others in misrepresenting, any fact material to a consumer's decision to apply for or purchase any product or service offered by Defendants EDP, Cleveland, or Wilson;

    c.    Failing to clearly and conspicuously disclose the costs, fees, or charges to obtain and use any prepaid, debit, or credit card;

    d.    Failing to clearly and conspicuously disclose any fee, charge or bill that will be assessed to a consumer's bank account, or that a consumer's billing information will be used to debit their accounts or sold to third parties for marketing purposes;

FIRST AMENDED COMPLAINT

1      e.    Failing to resolve consumer complaints within thirty (30) days of

2           receipt; and

3      f.    Failing to take reasonable steps to monitor and ensure compliance

4           with the FTC settlement.

5      52.   In February of 2011, Defendants EDP, Cleveland, and Wilson

6  were held in contempt, after the Court found that products offered through two

7  of their websites violated several prohibitions of the Injunction. *FTC v.*

8  *EDebitPay, LLC*, Case No. CV 07-4880, 2011 WL 486260 (C.D. Cal. 2011).

9      53.   The Court held that, although Defendants EDP, Cleveland, and

10  Wilson disclosed the product they were offering, the disclosures were

11  inadequate because they were in small font, in obscure locations on the

12  websites and not in proximity to the general representations.   The Court

13  specifically pointed out that its Injunction is not limited to certain products,

14  but applies to the marketing of ***any*** product or service.

15  **C.   The FTC Action against Defendant DBG**

16      54.   In July of 2011, the FTC filed a Complaint for Injunctive and Other

17  Equitable Relief against Defendant DBG based on the same misconduct that is at

18  issue in this litigation. *FTC v. Direct Benefits Group, LLC, et al.*, Case No. 6:11-

19  cv-01186-JA-GJK (M.D. Fla.).

20      55.   Specifically, the FTC alleges that Defendant DBG has "engaged in a

21  scheme to debit consumers' bank accounts without their knowledge or consent."

22  Under the scheme, "consumers are enrolled unwittingly into one of Defendants'

23  programs" such as the "Direct Benefits discount program, which purports to

24  provide consumers a variety of savings on gas, restaurants, travel, long distance

25  calling, groceries, and merchandise".

26      56.   Defendant DBG then "charge[s] [consumers] an annual fee for the

27  programs ranging from $98.40 to $99.90." "Consumers are charged for the

28  programs even when they specifically declined the offer for enrollment" and "do

ARIAS, OZZELLO & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

1   not discover that they have been enrolled in one of the Defendants' programs until
2   they see a debit that they do not recognize on their bank statement or until they are
3   contacted by their bank because their accounts are overdrawn as a result of the
4   unanticipated debit."

5   57.   The FTC further alleges that Defendant DBG effectuated the theft of
6   consumers' funds by the use of remotely created checks, and that Defendant DBG
7   was assisted in its fraud by Defendant Landmark, who processed the unauthorized
8   remotely created checks.

9   58.   On August 19, 2011, the United States District Court for the Middle
10   District of Florida entered a Preliminary Injunction against Defendant DBG,
11   barring it from obtaining consumers' bank account information without the
12   consumers' express informed consent. The FTC action against Defendant DBG is
13   currently pending.

14   **D.   The FTC Action against Defendant Landmark**

15   59.   In December of 2011, the FTC filed a Complaint for Injunctive and
16   Other Equitable Relief against Defendant Landmark based on the same
17   misconduct that is at issue in this litigation. *FTC v. Landmark Clearing, Inc., et*
18   *al.*, Case No. 4:11-cv-00826-MHS-ALM (E.D. Tx.).

19   60.   Specifically, the FTC alleges that Defendant Landmark plays "a
20   critical role" in the unlawful business practices of online scam artists who "have
21   routinely provided Landmark with the bank account information of consumers
22   who did not authorize the client merchant to debit their accounts."

23   61.   The FTC notes that, "[i]n recent years fraudulent merchants have
24   increasingly migrated to the use of . . . remotely created checks" and that remotely
25   created checks "have become an attractive payment mechanism for merchants
26   engaged in unauthorized debiting of consumer accounts."

27   62.   The FTC specifically identifies unlawful and unauthorized debits to
28   consumer accounts that were made by the EDebitPay Defendants and Defendant

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

DBG and processed by Defendant Landmark, stating:

    a.    "[F]rom May 2010 to March 2011, Landmark processed approximately 58,000 [remotely created checks] (with a value of over $5.7 million), through the First Bank of Delaware, on behalf of client merchant Platinum Online, of which more than 80% were rejected by the consumers' banks and returned."

    b.    "[F]rom May 2010 to February 2011, Landmark processed approximately 111,000 [remotely created checks] (with a value of over $5.3 million), through First Bank of Delaware, on behalf of DBG . . . .  Of these attempts, more than 70% were rejected by consumers' banks and returned."

63.    On December 29, 2011, the United States District Court for the Eastern District of Texas entered a Stipulated Permanent Injunction and Final Order banning Defendant Landmark from processing payments through the use of remotely created checks, and further entered a $1.5 million judgment against Defendant Landmark.

## DEFENDANTS' MISCONDUCT

### A.    The EDebitPay Defendants' Online Scheme

64.    The EDebitPay Defendants operate an online scheme that targets individuals who apply for apply online for short-term cash advances, commonly referred to as payday loans.

65.    A payday loan (also called a paycheck advance or payday advance) is a small, short-term loan intended to a cover a borrower's immediate expenses until his or her next paycheck arrives.

66.    Payday loans can be obtained in person through payday lenders with brick-and-mortar storefronts, or they can be obtained through the Internet by applying online at payday loan websites (the "Payday Loan Website(s)").

/ / /

**FIRST AMENDED COMPLAINT**

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

67.     When applying for a payday loan on a Payday Loan Website, an applicant is required to enter his or her personal information, including name, address, email address, and telephone number.   Additionally, an applicant is required to enter his or her checking account number and bank routing number. The Payday Loan Websites do not allow the applicant to proceed with the application process unless a valid checking account number and bank routing number is entered.  This is because loans obtained through a Payday Loan Website are deposited directly into the borrower's checking account and the repayment is similarly debited directly from his or her account.

68.     The EDebitPay Defendants are not, themselves, payday lenders. Rather, the EDebitPay Defendants operate coupon clubs known by such names as "SavingsPays" or "Ultimate Platinum."   These coupon clubs are shams and provide no legitimate benefits to consumers.

69.     The EDebitPay Defendants have affiliate relationships with the operators of the Payday Loan Websites, and use those relationships to unlawfully obtain, capture, and/or intercept the bank account information that consumers provide when applying for payday loans.

70.     The EDebitPay Defendants use that bank account information to draft remotely created checks—either directly or through the use of payment processors, including Defendant Landmark—that are drawn on the consumers' bank accounts.  These remotely created checks are purportedly for an $99 annual membership fee for enrollment in the EDebitPay Defendants' coupon club.

71.     The EDebitPay Defendants draft these remotely created checks even though the consumers never gave their express informed consent to:

        a.     Allow the Payday Loan Website operators to transmit their bank account information to the EDebitPay Defendants;

        b.     Allow the EDebitPay Defendants to obtain their bank account information;

**FIRST AMENDED COMPLAINT**

c.   Allow the EDebitPay Defendants to debit their bank accounts; or

d.   Enroll in the EDebitPay Defendants' coupon club.

72.   On information and belief Defendants Cleveland and Wilson knew about, controlled, orchestrated, and actively participated in the above-described misconduct as principals, officers, and employees of Defendants EDebitPay and Platinum.

73.   As the direct result of the EDebitPay Defendants' unlawful conduct, consumers, including Plaintiffs and the Class Members, have been damaged.

**B.   Defendant DBG's Online Scheme**

74.   Defendant DBG also operates an online scheme targeting individuals who apply for payday loans on Payday Loan Websites.

75.   Defendant DBG unlawfully obtains, captures, and/or intercepts the bank account information of consumers who apply for payday loans on Payday Loan Websites.

76.   Defendant DBG uses that unlawfully acquired bank account information to enroll the consumers in a sham coupon club known as "Unified Savings," then drafts an unauthorized remotely created check to debit the consumers' bank accounts, purportedly for a $99 annual membership fee.

77.   Defendant DBG generates these remotely created checks even though the consumers never gave their express informed consent to:

a.   Allow the Payday Loan Website operators to transmit their bank account information to the EDebitPay Defendants;

b.   Allow Defendant DBG to obtain their bank account information;

c.   Allow Defendant DBG to debit their bank accounts; or

d.   Enroll in Defendant DBG's coupon club.

///

**FIRST AMENDED COMPLAINT**

78.   As the direct result of Defendant DBG's unlawful conduct, consumers, including Plaintiffs and the Class Members, have been damaged.

**C.    Defendant Landmark's Role in the Online Schemes**

79.   Defendant Landmark is a payment processor that contracted with the EDebitPay Defendants and Defendant DBG to generate and process the unauthorized remotely created checks described herein in exchange for a fee check processed.

80.   From May 2010 to March 2011, Defendant Landmark processed approximately 58,000 remotely created checks on behalf of the EDebitPay Defendants, with a total value of over $5.7 million.

81.   From May 2010 to February 2011, Landmark processed approximately 111,000 remotely created checks on behalf of Defendant DBG, with a total value of over $5.3 million.

82.   In the payment processing industry, the monitoring of check return rates is a well-established component of best practices for risk-management. High return rates are a warning sign of fraudulent and unauthorized debiting practices.

83.   Publicly available data from the Federal Reserve shows that, for the year 2009, the total average check return rate was approximately 0.5%. *See* 2010 Federal Reserve Board Payments Study (April 5, 2011), available at http://www.frbservices.org/files/communications/pdf/ press/2010_payments_study.pdf.

84.   In contrast, the remotely created checks that Defendant Landmark processed for the EDebitPay Defendants had a return rate **exceeding 80%**.

85.   The remotely created checks that Defendant Landmark processed for Defendant DBG had a return rate **exceeding 70%**.

/ / /

/ / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

86.   Defendant Landmark specifically marketed its payment processing services to "[b]usinesses with a high percentage of overall returns" and "[b]usinesses with higher return rates of unauthorized returns".

87.   Defendant Landmark also advertised itself to high-risk merchants like the EDebitPay Defendants and Defendant DBG as an alternative to ACH processing, which bar merchants from using the ACH system if they have unauthorized return rates of higher than 1%.

88.   Defendant Landmark was well aware that the EDebitPay Defendants engage in unlawful debiting practices.   Defendant EDP was a former client of Defendant Landmark.   In 2006, Defendant Landmark terminated Defendant EDP due to return rates of 85%.   Defendant Landmark was also aware of the FTC action and settlement with Defendants EDP, Cleveland, and Wilson.   Nevertheless, Defendant Landmark accepted Defendant Platinum as a client, even though Defendant Platinum is a wholly owned subsidiary of Defendant EDP, and Defendants Cleveland and Wilson are principals of both entities.

89.   Furthermore, in its application to Defendant Landmark, Defendant Platinum stated that it anticipated a return rate of 75%, and notified Defendant Landmark that its return rate with a prior processor during the previous six months was 85%.

90.   Similarly, in its application to Defendant Landmark, Defendant DBG informed Defendant Landmark that it anticipated a return rate of 70%.

91.   As the direct result of Defendant Landmark's unlawful conduct, consumers, including Plaintiffs, have been damaged.

**D.   Defendant First Bank of Delaware's Role in the Online Schemes**

92.   In the banking industry, as with the payment processing industry, the monitoring of check return rates is a well-established component of best practices for risk-management, and high return rates are a warning sign of

**FIRST AMENDED COMPLAINT**

1    fraudulent and unauthorized debiting practices.

2    93.   During the time that Defendant Landmark was generating
3    remotely created checks for the EDebitPay Defendants and Defendant DBG,
4    Defendant First Bank of Delaware served as Defendant Landmark's depositary
5    bank.

6    94.   The EDebitPay Defendants and Defendant DBG would provide
7    Defendant Landmark with the unlawfully obtained consumer banking
8    information, Defendant Landmark would generate a remotely created check,
9    and deposit it with Defendant First Bank of Delaware.  Defendant First Bank
10   of Delaware would then present the remotely created check to the consumers'
11   banks for payment.

12   95.   Plaintiffs are informed and believe that, after the remotely created
13   checks cleared, Defendant Landmark would transfer the stolen funds to the
14   EDebitPay Defendants and Defendant DBG, after deducting a processing fee.

15   96.   Defendant First Bank of Delaware was fully aware of the return
16   rates on the remotely created checks processed by Defendant Landmark on
17   behalf of the EDebitPay Defendants and Defendant DBG.

18   97.   Based on these circumstances, First Bank of Delaware knew, or
19   with the exercise of ordinary care would have known, that Defendant
20   Landmark and its clients the EDebitPay Defendants and Defendant DBG were
21   engaging in wrongful and unlawful conduct.

22   98.   Despite First Bank of Delaware's knowledge—or reckless
23   disregard of the Defendants' unlawful practices—First Bank of Delaware
24   continued to provide material assistance to Defendant Landmark, the
25   EDebitPay Defendants, and Defendant DBG in depositing and settling the
26   fraudulent remotely created checks.

27   99.   As a result of First Bank of Delaware's affirmative misconduct,
28   consumers, including Plaintiffs, have been damaged.

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER| ROSENFELD, LLP

# THE VICTIMIZATION OF PLAINTIFFS
## AND THE PLAINTIFF CLASS

**A.   Plaintiff Anita White**

100.   Plaintiff Anita White has never knowingly applied to be a member of any coupon club operated by the EDebitPay Defendants or Defendant DBG. Plaintiff White never knowingly provided her bank account information to the EDebitPay Defendants or Defendant DBG.   Plaintiff White never gave her express informed consent authorizing the EDebitPay Defendants or Defendant DBG to generate remotely created checks from her checking account.

101.   In or around January 2011, Plaintiff White applied for payday loans on Payday Loan Websites.   In applying for the loans, Plaintiff White filled out an online application and provided her personal and bank account information.   Plaintiff White, a senior citizen, also disclosed that her only source of income was social security.

102.   On information and belief, without Plaintiff White's knowledge or consent, Plaintiff White's personal information—including her checking account number and bank routing number—was transferred to, and intercepted by, the EDebitPay Defendants and Defendant DBG.

103.   Without Plaintiff White's knowledge or consent, the EDebitPay Defendants and Defendant DBG used her personal information—including her account number and bank routing number—to enroll Plaintiff White as a member of their sham coupon clubs.   Plaintiff White received no benefit from her enrollment in these coupon clubs.

104.   On or around March 11, 2011, Defendant DBG generated a remotely created check in the amount of $99.90 and attempted to debit Plaintiff White's bank account.   The remotely created check was paid to the order of "Unified Savings", which is a name under which Defendant DBG does business. (*See* Exhibit "A".)

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

1    105. On or around March 18, 2011, the EDebitPay Defendants
2    generated a remotely created check in the amount of $99.49 and attempted to
3    debit Plaintiff White's bank account. The remotely created check was paid to
4    the order of "Platinum Online Group – SavingsPays99". (*See* Exhibit "B".)

5    106. On March 25, 2011, the EDebitPay Defendants generated a second
6    remotely created check in the amount of $99.49 and again attempted to debit
7    Plaintiff White's bank account. The remotely created check was paid to the
8    order of "Platinum Online Group – SavingsPays99 Redeposit".

9    107. Plaintiff White is informed and believes that the March 18th and
10    25th remotely created checks were processed by Defendant Landmark through
11    its depositary bank, Defendant First Bank of Delaware.

12    108. Because Plaintiff White was on a limited fixed income, she did not
13    have sufficient funds in her account to cover the forged checks described
14    above. As a result, the unauthorized remotely created checks "bounced"
15    causing Plaintiff to incur three separate insufficient fund fees of $34 from her
16    bank. These insufficient funds fees caused Plaintiff White's account to be
17    overdrawn, which in turn created a cascading effect of further "bounced"
18    checks and insufficient funds fees.

19    **B.    Plaintiff Deborah Deffenbaugh**

20    109. Plaintiff Deborah Deffenbaugh has never knowingly applied to be
21    a member of any coupon club operated by the EDebitPay Defendants. Plaintiff
22    Deffenbaugh never knowingly provided her bank account information to the
23    EDebitPay Defendants. Plaintiff Deffenbaugh never gave her express
24    informed consent authorizing the EDebitPay Defendants to generate remotely
25    created checks from her checking account.

26    110. In or around May 2011, Deffenbaugh applied for a payday loan on
27    a Payday Loan Website.
28    / / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

111.  In applying for a payday loan, the Payday Loan Website presented Plaintiff Deffenbaugh with online offers for unrelated goods and services. However, Plaintiff Deffenbaugh specifically chose not to participate in any of those offers or to make any purchases.  Given Plaintiff Deffenbaugh's financial situation, it was not possible for her to consider participating in such offers, and she automatically rejected all such offers.

112.  In order to apply for a payday loan, the Payday Loan Website required Plaintiff Deffenbaugh to enter her checking account number and her bank routing number into the Payday Loan Website's application screen. Plaintiff Deffenbaugh entered this information into the Payday Loan Website.

113.  On information and belief, without Plaintiff Deffenbaugh's knowledge or consent, Plaintiff Deffenbaugh's personal information— including her checking account number and bank routing number—was transferred to, and intercepted by, the EDebitPay Defendants.

114.  Without Plaintiff Deffenbaugh's knowledge or consent, the EDebitPay Defendants used her personal information—including her account number and bank routing number—to enroll Plaintiff Deffenbaugh as a member of the EDebitPay Defendants' coupon club.

115.  On or around May 25, 2011, without Plaintiff Deffenbaugh's knowledge or consent, Defendants generated a remotely created check from Deffenbaugh's checking account, payable to "Platinum Online Group -- SavingPays99," in the amount of $99.49.

116.  Because Plaintiff Deffenbaugh had no knowledge of the EDebitPay Defendants or their coupon club, and because Plaintiff Deffenbaugh had not consented to have the EDebitPay Defendants draft a remotely created check to pay for a membership in any of the EDebitPay Defendants' coupon clubs, Deffenbaugh did not learn that the EDebitPay Defendants had drafted a remotely created check in her name until after the

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

FIRST AMENDED COMPLAINT

1  check had settled and funds had been withdrawn from Plaintiff Deffenbaugh's

2  account.

3      117.  As a result of the EDebitPay Defendants' misconduct, money was

4  wrongfully withdrawn from Plaintiff Deffenbaugh's account and she has been

5  damaged.

6  **C.  Plaintiff Dannie Braswell**

7      118.  Plaintiff Dannie Braswell has never knowingly applied to be a

8  member of any coupon club operated by the EDebitPay Defendants.  Plaintiff

9  Braswell never knowingly provided her bank account information to the

10  EDebitPay Defendants.  Plaintiff Braswell never gave her express informed

11  consent authorizing the EDebitPay Defendants to generate remotely created

12  checks from her checking account.

13      119.  In or around January 2011, Plaintiff Braswell applied for a payday

14  loan on a Payday Loan Website.

15      120.  In applying for a payday loan, the Payday Loan Website presented

16  Plaintiff Braswell with online offers for unrelated goods and services.

17  However, Plaintiff Braswell specifically chose not to participate in any of

18  those offers or to make any purchases.  Given Plaintiff Braswell's financial

19  situation, it was not possible for Plaintiff Braswell to consider participating in

20  such offers, and she automatically rejected all such offers.

21      121.  In order to apply for a payday loan, the Payday Loan Website

22  required Plaintiff Braswell to enter her checking account number and her bank

23  routing number into the Payday Loan Website's application screen.  Plaintiff

24  Braswell entered this information into the Payday Loan Website.

25      122.  On information and belief, without Plaintiff Braswell's knowledge

26  or consent, Plaintiff Braswell's personal information—including her checking

27  account number and bank routing number—was transferred to, and intercepted

28  by, the EDebitPay Defendants.

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER| ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

123.   Without Plaintiff Braswell's knowledge or consent, the EDebitPay Defendants used her personal information—including her account number and bank routing number—to enroll Plaintiff Braswell as a member of the EDebitPay Defendants' coupon club.

124.   On or around January 24, 2011, without Braswell's knowledge or consent, the EDebitPay Defendants generated a remotely created check from Braswell's checking account, payable to "Platinum Online Group," in the amount of $99.00.

125.   Because Plaintiff Braswell had no knowledge of the EDebitPay Defendants or their coupon club, and because Plaintiff Braswell had not consented to have the EDebitPay Defendants draft a remotely created check to pay for a membership in any of the EDebitPay Defendants' coupon clubs, Plaintiff Braswell did not learn that the EDebitPay Defendants had drafted a remotely created check in her name until after the check had settled and funds had been withdrawn from Plaintiff Braswell's account.

126.   As a result of Defendants' misconduct, money was wrongfully withdrawn from Plaintiff Braswell's account and she has been damaged.

**D.   Other Consumers Victimized by Defendants**

127.   Thousands of consumers have been defrauded by Defendants. Complaints posted on the Internet demonstrate the breadth of Defendants' unlawful practices under the SavingsPays99 and the Unified Savings schemes:

SavingsPays99:

- "I applied for a payday loan but never authorized this company to take funds out of my checking account thus causing me to have overdraft charges with my bank and I want my money back in my account." Posted April 29, 2011 at http://www.complaintsboard.com/complaints/platinnum-online-group-savings-pays-99-c448277.html.

**FIRST AMENDED COMPLAINT**

1     • "I just had surgery on my left hand and will be out of commission for approximately 6 weeks, maybe longer. Just received notice from my bank that I had a check numbered #6354035 for $99.49 that had been presented for payment resulting in overdraft payments due to the non clear of other checks that had been written. These resulting over draft charges amounting to $136.00 made me hopping mad." Posted June 6, 2011 at http://www.scaminformer.com/scam-report/platinum-online-group-savingspays99-platinum-online-group-c34810.html.

2

3

4

5

6

7

8     • "This company Platinum Online Group - Saving Pays 99 are nothing but a bunch of greedy thieves that will stop at nothing to steal from you by hacking into your so called protected on line information. I had to secure an online loan when I got out of the hospital, to secure necessary meds, and I am on a fixed income that results in every penny is needed to pay, house payment, utilities, groceries and incidentals by the time this is done each month when retirement check comes in there is nothing left over. The no good carpet baggers in this company are a bunch of dirty b*%&$#*s who prey upon the poor." Posted June 7, 2011 at http://www.ripoffreport.com/organized-crime/platinum-online-grou/platinum-online-group-savingsp-56e93.htm.

9

10

11

12

13

14

15

16

17

18     • "I was ripped Off by Platinum Online Group for $99.49 against my Savings Account. I just got out of the hospital with a broken back literally. I just had major surgery. I have a lawsuit going and requested a lawsuit loan from a legitimate company. Platinum Online Group "hacked" into my Account and tool\k out $99.49 without my permission or my lawyers or banks knowledge. They robbed me at a severe time in my life. I'm calling out the FBI, AG, etc.. I want this money back and I want them prosecuted to the full. I'm incensed.!!!!!!!! RB" Posted November 19, 2010 at http://www.ripoffreport.com/banks/platinum-online-grou/platinum-online-group-saving-c4d2f.htm.

19

20

21

22

23

24

25

26   / / /

27   / / /

28   / / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

Unified Savings

- "Checked account balance on line an noticed unified savings had deducted 99.90 from my account which cost me an additional 35.00 over draft fee. I have not signed any papers nor have I given any permission for this company to draft any monies from my account" Posted June 27, 2011 at http://www.scambook.com/report/view/1790/Unified-Savings-False-Advertising-for-134.90-on-06-06-2011.

- "Electronic check for $99.90 posted to my checking account. Did not authorize this charge nor have any contact with them. Still trying to resolve the refund with them to no avail. Spoke with Amy who was supposed to be issuing a refund. Closed my checking account. Refund is still not issued and I am unable to reach anyone." Posted July 23, 2011 at http://www.scambook.com/report/view/6333/Unified-Savings-False-Advertising-for-99.90-on-04-27-2011.

- "I was looking for a Loan.. filled everything out. They asked for an account number. what I thought was a deposit in my account but only to find out they took it out instead .. I want this canceled .." Posted on July 22, 2011 at http://www.scambook.com/report/view/6087/Unified-Savings-Other-for-99.90-on-07-21-2011.

- "NSF RETURN ITEM FEE FOR ITEM $99.90 07/18 CHECK # 09999, I saw this transaction in my online bank services, I got curious, because I haven't written a check in over a year. When I called, they told me it was a electronic charge from a company(Unified Savings), who I have never heard of before, nor gave them permission to uphold personal banking info, and non the less granted permission to access funds. This affects me widely considering I'm in a time of need, and have countless of bills to pay." Posted on July 19, 2011 at http://www.scambook.com/report/view/5570/Unified-Savings-Unauthorized-Credit-Card-Charge-for-35.00-on-07-19-2011.

# FIRST CLAIM FOR RELIEF

## ELECTRONIC COMMUNICATIONS PRIVACY ACT

### 18 U.S.C. §§2510, *et seq.*

**(By Plaintiffs and the Class Members against all Defendants)**

128. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 127.

129. Plaintiffs and the Class Members applied for payday loans on various Payday Loan Websites.

130. Plaintiffs and the Class Members submitted their personal banking information to the operators of the Payday Loan Websites with the understanding that such information would be used only to apply for and fund a payday loan.

131. Plaintiffs' and the Class Members' submission of personal banking information to the operators of the Payday Loan Websites constituted "electronic communication[s]", as that term is defined in the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §2510(12).

132. Without the authorization or express informed consent of Plaintiffs or the Class Members, the EDebitPay Defendants and Defendant DBG "intercept[ed]" the Class Members' electronic communications, as that term is defined in 18 U.S.C. §2510(4).

133. Plaintiffs are informed and believe that the EDebitPay Defendants and Defendant DBG intercepted Plaintiffs' and the Class Members' electronic communications through the use of computers, servers, and software under the control of the EDebitPay Defendants and Defendant DBG or their agents.

134. Without the authorization or express informed consent of Plaintiffs or the Class Members, the EDebitPay Defendants and Defendant DBG disclosed and transmitted the "contents" of the intercepted communications (*i.e.*, personal banking information) to Defendant Landmark, as that term is defined in 18 U.S.C. §2510(8).

**FIRST AMENDED COMPLAINT**

135.  Defendant Landmark used the intercepted personal and banking information of Plaintiffs and the Class Members to generate and deposit, or attempt to deposit, remotely created checks drawn on the bank accounts of Plaintiffs and the Class Members.

136.  Defendant Landmark disclosed the intercepted personal and banking information of Plaintiffs and the Class Members to Defendant First Bank of Delaware when it deposited or attempted to deposit the remotely created checks.

137.  Defendant First Bank of Delaware used the intercepted personal and banking information of Plaintiffs and the Class Members when it submitted the remotely created checks to the payor banks for payment.

138.  By engaging in the above-described conduct, the Defendants intentionally used and/or endeavored to use and disclosed and/or endeavored to disclose contents of an electronic communication, knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. §2511.

139.  Defendants intercepted and used Plaintiffs' and the Class Members' electronic communications for the purpose of committing criminal and tortious acts in violation of the laws of the United States and other states.

140.  As a result of the Defendants' misconduct, Plaintiffs and the Class Members have been damaged.

## SECOND CLAIM FOR RELIEF

## ELECTRONIC FUNDS AND TRANSFER ACT

### 15 U.S.C. §1693, *et seq.*

**(By Plaintiffs and the Class Members against the EDebitPay Defendants, Defendant DBG, and Defendant Landmark)**

141.  Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 140.

/ / /

**FIRST AMENDED COMPLAINT**

142.  Plaintiffs are informed and believe that the EDebitPay Defendants, Defendant DBG, and Defendant Landmark debited or attempted to debit the accounts of Plaintiffs and the Class Members using a particular type of remotely created check known as remotely created payment orders ("RCPOs").

143.  RCPOs are digital checks that are generated and transmitted electronically and constitute an "electronic funds transfer" as that phrase is used in the Electronic Funds and Transfer Act ("EFTA"), 15 U.S.C. §1693a(6).

144.  The $99 annual membership fees that were electronically withdrawn, or attempted to be electronically withdrawn, from the accounts of Plaintiffs and the Class Members constitute "preauthorized electronic fund transfer[s]" as that phrase is used in 15 U.S.C. §1693a(9).

145.  The EFTA provides that a preauthorized electronic fund transfer from a consumer account must be authorized by the consumer in writing.

146.  The EFTA also prohibits any "unauthorized electronic fund transfer", which is defined at 15 U.S.C. §1693a(11) as "an electronic fund transfer from a consumer's account initiated by a person other than the consumer without actual authority to initiate such transfer and from which the consumer receives no benefit."

147.  The practices of the EDebitPay Defendants, Defendant DBG, and Defendant Landmark violated the EFTA, as the EDebitPay Defendants, Defendant DBG, and Defendant Landmark:

        a.    did not obtain consent in writing to initiate the electronic fund transfers described herein;

        b.    did not have the authority to initiate the electronic funds transfers described herein; and

        c.    Plaintiffs and the Class Members received no benefit from the electronic funds transfers described herein.

/ / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

FIRST AMENDED COMPLAINT

1    148.  As a direct and proximate result of the EDebitPay Defendants',

2  Defendant DBG's, and Defendant Landmark's violations of the EFTA,

3  Plaintiff and the Class Members have been damaged.

### THIRD CLAIM FOR RELIEF

### CONSUMERS LEGAL REMEDIES ACT,

### CAL. CIV. CODE §§1750, *et seq.*

**(By Plaintiffs and the Class Members against**

**the EDebitPay Defendants and Defendant DBG)**

9    149.  Plaintiffs incorporate by reference the allegations contained in

10  Paragraphs 1 through 148.

11    150.  This claim for relief is brought pursuant to the Consumers Legal

12  Remedies Act ("CLRA"), CAL. CIV. CODE §§1750, *et seq.*

13    151.  The actions of the EDebitPay Defendants and Defendant DBG as

14  described herein were intended to deceive Plaintiffs and the Class Members

15  and have resulted, and will result in monetary loss.  These actions violated and

16  continue to violate the CLRA in, at least, the following respects:

a.    In violation of §1770(a)(5) of the CLRA, the acts and
practices of the EDebitPay Defendants and Defendant DBG
constitute the use of deceptive representations and/or
omissions with regard to their sponsorship, approval, status,
affiliation or connection with the short term loan companies,
and the deceptive failure to disclose the fees associated with
membership in the coupon club; and

b.    In violation of §1770(a)(14) of the CLRA, the acts and
practices of the EDebitPay Defendants and Defendant DBG
constitute the use of deceptive representations and/or
omissions in connection with their unlawful transactions.

28  / / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

152.  By reason of the foregoing, Plaintiffs and the Class Members have been, and will continue to be, harmed.

153.  Pursuant to CAL. CIV. CODE §1750, *et seq.*, Plaintiffs issued a demand for adequate remedies under the CLRA.  After waiting the requisite thirty (30) days, Plaintiffs now invoke their right to request damages, including but not limited to, actual, consequential, general, and punitive damages, as well as all authorized civil penalties, including up to $5,000 for each Class Member who is a senior citizen.

**FOURTH CLAIM FOR RELIEF**

**CALIFORNIA UNFAIR COMPETITION LAW**

**CAL. BUS. AND PROF. CODE §§17200, *et seq.***

**(By Plaintiffs and the Class Members against All Defendants)**

154.  Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 153.

155.  Pursuant to the Restore Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. §8402, it is unlawful for any post-transaction third party seller to charge or attempt to charge a person's bank account for any good or service sold in a transaction effected on the Internet unless: a) before obtaining the consumer's billing information, the post-transaction third party seller has clearly and conspicuously disclosed to the consumer all material terms of the transaction, and b) the post-transaction third party seller has received the express informed consent for the charge from the consumer by requiring the consumer to perform an additional affirmative action, such as clicking on a confirmation button or checking a box that indicates the consumer's consent to be charged the amount disclosed.

156.  Pursuant to 15 U.S.C. §8403, it is unlawful for any person to charge any consumer for any goods or services sold in a transaction effected on the Internet through a negative option feature, as defined in 16 C.F.R. §310, unless the person: a) provides text that clearly and conspicuously discloses all material terms

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

of the transaction before obtaining the consumer's billing information, b) obtains the consumer's express informed consent before charging the consumer's bank account for products or services through such transaction, and c) provides simple mechanisms for the consumer to stop recurring charges from being placed on the consumer's bank account.

157.  The EDebitPay Defendants and Defendant DBG failed to adhere to the requirements of ROSCA before they drew checks on the accounts of Plaintiffs and the other class members.

158.  Defendants, as set forth in this Complaint, *supra*, engaged in unlawful, unfair and/or fraudulent business practices, consisting of acts and omissions that include, but are not limited to:

    a.    Violations of the ECPA, EFTA, CLRA, and ROSCA;

    b.    Fraudulent concealment of material facts, when Defendants had an affirmative duty to disclose those facts to consumers;

    c.    Failure to disclose to consumers that they would be debited for unrelated products when they applied for short term loans online;

    d.    Violation of the Final Order for Permanent Injunction and Monetary Relief in *FTC v. EDebitPay, LLC et al*, Case No. CV 07-4880 (Jan. 17, 2008, C.D. Cal);

    e.    Any other common and statutory laws which prohibit the debit and withdrawal of money from consumers' bank accounts without their permission.

159.  Defendants' conduct violates CAL. BUS. & PROF. CODE §§17200, *et seq.*, in that these Defendants either were, or reasonably should have been, aware that the unauthorized debits and withdrawal of money from consumers' bank accounts were unlawful under the circumstances.

/ / /

FIRST AMENDED COMPLAINT

160. Furthermore, if the EDebitPay Defendants and Defendant DBG had honestly disclosed their practices, consumers, including Plaintiffs and Class Members, would have had the opportunity to choose not to participate in the coupon clubs run by the EDebitPay Defendants and Defendant DBG.

161. CAL. BUS. & PROF. CODE §§ 17200, *et seq.*, also prohibits acts of unfair competition, which shall mean and include any unfair or fraudulent business acts or practice. As more fully described above, the unauthorized debits and withdrawals of money from consumers' bank accounts, and the EDebitPay Defendants' and Defendant DBG's deceptive misrepresentations and/or omissions regarding the same constitute an unfair business act or practice within the meaning of CAL. BUS. & PROF. CODE §§ 17200, *et seq.*, in that the justification for these Defendants' conduct is outweighed by the gravity of the consequences to Plaintiffs and the Class Members.

162. The acts of the EDebitPay Defendants and Defendant DBG as described above also deceived Plaintiffs and the Class Members, constituting a fraudulent business act or practice. Such conduct is ongoing and continues to this date, particularly with respect to the EDebitPay Defendants.

163. As a result of the acts described above, Defendants obtained an unfair advantage in the marketplace.

164. Plaintiffs and the Class Members seek judicial orders of an equitable nature against these Defendants, including, but not limited to, orders declaring that such practices are unlawful, unfair, fraudulent and/or deceptive, and enjoining these Defendants from undertaking any further unfair, unlawful, fraudulent, and/or deceptive acts or omissions.

165. Specifically, Plaintiffs and the Class Members seek judicial orders barring the following conduct:

> a.  The continued use of remotely created checks by the EDebitPay Defendants;

FIRST AMENDED COMPLAINT

b.   The continued use of remotely created checks by Defendant DBG; and

c.   The acceptance for deposit by Defendant First Bank of Delaware of remotely created checks payable to either the EDebitPay Defendants or Defendant DBG

## FIFTH CLAIM FOR RELIEF

## NEGLIGENCE

**(By Plaintiffs and the Class Members against**
**Defendants Landmark and First Bank of Delaware)**

166.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 165.

167.   Payment processors and depositary banks, including Defendants Landmark and First Bank of Delaware, have a general duty to avoid causing foreseeable injury to third parties, including Plaintiffs and the Class Members.

168.   This includes an affirmative duty to make reasonable inquiries into the suspicious activities of their payment processing and banking clients.

169.   It is well known within the payment processing and banking industries that remotely created checks are particularly susceptible to fraud and are the preferred method for fraudulent actors to taking consumers' money through fraudulent schemes.

170.   The use of unauthorized remotely created checks poses a foreseeable risk of injury to those individuals on whose accounts the checks are drawn.

171.   It is well known within the payment processing and banking industries that businesses associated with online payday lenders have an elevated risk of fraud.

/ / /

/ / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

172.   In the banking and payment processing industries, the monitoring of check return rates is a well-established component of best practices for risk-management, and high return rates are a warning sign of fraudulent and unauthorized debiting practices.

173.   State and federal regulations assigning the risk of loss associated with remotely created checks repeatedly acknowledge that depositary banks are in the best position to detect the fraudulent use of such checks.

174.   Defendants Landmark and First Bank of Delaware breached their duties to Plaintiffs and the Class Members by failing to conduct a reasonable inquiry into activities of the EDebitPay Defendants and Defendant DBG, despite:

a.   The EDebitPay Defendants' known involvement in fraudulent activities;

b.   The connection of the EDebitPay Defendants and Defendant DBG to the online payday loan industry; and

c.   Excessive return rates.

175.   Defendants Landmark and First Bank of Delaware knew or acted in reckless disregard of the fact that their assistance to the EDebitPay Defendants and Defendant DBG was likely to cause injury to Plaintiffs and the Class Members.

176.   As the direct and proximate result of Defendants Landmark's and First Bank of Delaware's breach of their respective duties, Plaintiffs and the Class Members were damaged.

## SIXTH CLAIM FOR RELIEF
## CONVERSION & AIDING AND ABETTING CONVERSION
### (By Plaintiffs and the Plaintiff Class against all Defendants)

177.   Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 176.

178.   Without the authorization or express informed consent of Plaintiffs or the Class Members, the EDebitPay Defendants, Defendant DBG, and Defendant

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER│ROSENFELD, LLP

1  Landmark drafted remotely created checks drawn on the checking accounts of
2  Plaintiffs and the Class Members.

3      179.  Without the authorization or express informed consent of Plaintiffs or
4  the Class Members, the EDebitPay Defendants, Defendant DBG, and/or
5  Defendant Landmark deposited in their depositary bank accounts the remotely
6  created checks drawn on the checking accounts of Plaintiffs and the Class
7  Members.

8      180.  Without the authorization or express informed consent of Plaintiffs or
9  the Class members, money was transferred from the checking accounts of
10  Plaintiffs and the Class Members to the depositary bank accounts of the
11  EDebitPay Defendants, Defendant DBG, and/or Defendant Landmark.

12      181.  First Bank of Delaware provided substantial assistance to the
13  EDebitPay Defendants, Defendant DBG, and Defendant Landmark in their
14  commission of the above-described misconduct.

15      182.  First Bank of Delaware provided substantial assistance to the
16  EDebitPay Defendants, Defendant DBG, and Defendant Landmark while knowing
17  about, or in reckless disregard of, the wrongfulness and unlawfulness of the
18  conduct of the EDebitPay Defendants, Defendant DBG, and Defendant Landmark.

19      183.  Plaintiffs and the other Class Members owned the money in their
20  bank accounts that was wrongfully transferred by Defendants through the use
21  of remotely created checks.

22      184.  The specific sums of money of Plaintiffs and the Class Members
23  that was converted by Defendants is readily identifiable from information and
24  records in Defendants' possession or control.

25      185.  Defendants transferred Plaintiffs' and the other Class members'
26  money to Defendants willfully, without legal justification, and in a manner that
27  was inconsistent with and violated Plaintiffs' and the Class Members' rights to
28  their money.

FIRST AMENDED COMPLAINT

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

# SEVENTH CLAIM FOR RELIEF

## FRAUD AND DECEIT

**(By Plaintiffs and the Class Members against
the EDebitPay Defendants and Defendant DBG)**

186. Plaintiffs incorporate by reference the allegations contained in Paragraphs 1 through 185.

187. The acts, conduct, and practices of the EDebitPay Defendants and Defendant DBG, as alleged above, were fraudulent and deceptive.

188. The EDebitPay Defendants and Defendant DBG concealed the fact that during the short term loan process the EDebitPay Defendants and Defendant DBG were purposefully and unlawfully capturing the personal financial information of the short term loan applicants and subsequently debiting and withdrawing money from their bank accounts, without their permission or knowledge, for unrelated products.

189. Plaintiffs and Class Members had no reason to believe when they directly applied for a short term loan online that their personal financial information would be captured by the EDebitPay Defendants and Defendant DBG and used to debit and withdraw money for unrelated products.

190. The EDebitPay Defendants and Defendant DBG knew, or should have known, that withdrawing money from consumers' accounts without their permission was unlawful and would harm consumers.

191. The EDebitPay Defendants and Defendant DBG purposefully never sent an invoice or bill to Plaintiffs or the Class Members informing them that their bank accounts were going to be, or were in fact, debited.

192. The EDebitPay Defendants' and Defendant DBG's suppression of the material facts set forth above and throughout this Complaint defrauded Plaintiff and the Class Members, and is in direct violation of statutes, as well as principles of common law warranting punitive damages in an amount

**FIRST AMENDED COMPLAINT**

1     according to proof at the time of trial.

2     **EIGHTH CLAIM FOR RELIEF**

3     **INVASION OF PRIVACY**

4     **(By Plaintiffs and the Plaintiff Class against All Defendants)**

5     193. Plaintiffs incorporate by reference the allegations contained in

6     Paragraphs 1 through 192.

7     194. Plaintiffs and the Class Members had a reasonable expectation of

8     privacy in their personal and banking information that they transmitted to the

9     operators of the Payday Loan Websites when they applied for payday loans.

10     195. As described herein, the Defendants obtained unauthorized and

11     unwanted access to the personal and banking information of Plaintiffs and the

12     Class Members.

13     196. The intrusion into and theft from one's checking account and

14     violation of one's financial privacy would be considered highly offensive to

15     the average person.

16     197. As the direct and proximate result of Defendants' intrusion into and

17     invasion of the privacy of Plaintiffs and the Class Members, Plaintiffs and the

18     Class Members suffered monetary loss and emotional distress.

19     / / /

20     / / /

21     / / /

22     / / /

23     / / /

24     / / /

25     / / /

26     / / /

27     / / /

28     / / /

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER|ROSENFELD, LLP

**FIRST AMENDED COMPLAINT**

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves and the Class Members prays for judgment and relief against Defendants as follows:

1.  That the Court enter a judgment finding that Defendants have:

    a.  violated the ECPA, 18 U.S.C. §§2510, *et seq.*;

    b.  violated the EFTA, 15 U.S.C. §§1693, *et seq.*;

    c.  violated the CLRA, Cal. Civ. Code §§1750, *et seq.*;

    d.  violated California Business and Professions Code §§17200, *et seq.*;

    e.  committed negligence;

    f.  committed conversion and aiding and abetting conversion;

    g.  committed fraud and deceit; and

    h.  committed an invasion of privacy.

2.  That the Court enter a preliminary and permanent injunction restraining Defendants from drafting, processing, or depositing remotely created checks.

3.  That the Court award damages and monetary relief as follows:

    a.  Actual and compensatory damages in an amount to be determined at trial;

    b.  Restitution of money wrongfully withdrawn from the Class Members' checking accounts in an amount to be determined at trial;

    c.  The greater of the Class members' actual damages on the one hand and statutory damages of $10,000 per violation as for each Class member on the other hand pursuant to 18 U.S.C. §2520(c);

    d.  Punitive damages pursuant to 18 U.S.C. §2520(a);

    e.  Statutory damages pursuant to 15 U.S.C. §1693m;

**FIRST AMENDED COMPLAINT**

ARIAS, OZZELLO, & GIGNAC, LLP
KRONENBERGER | ROSENFELD, LLP

1          f.     Statutory damages pursuant to California Civil Code §1780;

2          g.     Exemplary damages pursuant to California Civil Code §3294;

3          h.     Reasonable attorneys' fees and the costs of suit.

4    4.     Such other relief that the Court determines is just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated:  March 23, 2012        **ARIAS, OZZELLO & GIGNAC, LLP**

By: _____
MIKE ARIAS
DENIS M. DELJA

**KRONENBERGER ROSENFELD, LLP**
KARL S. KRONENBERGER
JEFFREY M. ROSENFELD

*ARIAS, OZZELLO, & GIGNAC, LLP*
*KRONENBERGER | ROSENFELD, LLP*

**FIRST AMENDED COMPLAINT**

# EXHIBIT "A"

**Anita White**

DATE 03/11/2011

PAY TO THE
ORDER OF **Unified Savings**                                          $ 99.90

"NINETY NINE DOLLARS AND NINETY CENTS"

WASHINGTON MUTUAL BANK

**Memo:**
CUSTOMER SERVICE PHONE #:800-284-4172
PURCHASE OF GOODS OR SERVICES                          **Authorization On File**
ORDER ID                    12:00:00 AM 03/11/2011

Pay to the Order Of
PUBLIC SAVINGS BANK
For Deposit Only
Unified Savings

EXHIBIT "B"

Posting Date:         2011-03-18
Sequence #:           ███████████
Account #:            ████████
Routing Transit:      ████████
Amount #:             $99.49
Check/Serial #:       █████████
Bank #:               ████
Tran Code:            ██████
IRD:                  ██
ItemType:             ██
BOFD:                 ████████
Cost Center:          N/A
Teller Number:        N/A
Teller Seq Number:    N/A
Processing Date:      N/A





Anita White

J.P. MORGAN CHASE BANK, N.A.

3/16/2011

PAY   Platinum Online Group - SavingPays99                    $99.49
TO THE ORDER OF
    NINETY NINE AND 49/100 DOLLARS

3/18/2011

Thank You for ordering your
SAVINGPAYS membership 818-255-9973
Computer IP:
State: CA

Authorized By Your Customer
No Signature Required

DEPOSIT TO THE ACCOUNT
OF THE
WITHIN NAMED PAYEE

**ARIAS OZZELLO & GIGNAC LLP**

# PROOF OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the State of California, County of Los Angeles. I am over the age of eighteen and am not a party to the within action; my business address is 6701 Center Drive West, Suite 1400, Los Angeles, California 90045.

On **March 23, 2012**, I served the foregoing documents described as: **FIRST AMENDED COMPLAINT** on the interested parties in this action by transmitting [ ] the original [✔] a true copy thereof as follows:

> Michael Mallow
> Christine M. Reilly
> **LOEB & LOEB LLP**
> 10100 Santa Monica Blvd.
> Suite 2200
> Los Angeles, CA 90067
> Telephone: (310) 282-2361
> Facsimile: (213) 652-1830
> mmallow@loeb.com
> creilly@loeb.com
>
> *Attorneys for Defendants*
> *EDEBITPAY, L.L.C., PLATINUM*
> *ONLINE GROUP, LLC, DALE*
> *PAUL CLEVELAND, and WILLIAM*
> *RICHARD WILSON*

[ ]  **(BY E-MAIL)** I hereby certify that this document was served by e-mail delivery on the parties listed herein at their most recent e-mail of record in this action on March 23, 2012, from Los Angeles, California.

[ ]  **(BY FAX)** I hereby certify that this document was served by facsimile delivery on the parties listed herein at their most recent fax number of record in this action on March 23, 2012 from Los Angeles, California.

[ ]  **(BY PERSONAL SERVICE)** I delivered such envelope by hand to the offices of the addressee named herein.

[✔]  **BY MAIL (enclosed in a sealed envelope):** I deposited the envelopes for mailing in the ordinary course of business at Los Angeles, California. I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. Under that practice, the sealed envelopes are deposited with the U.S. Postal Service that same day in the ordinary course of business with postage thereon fully prepaid at Los Angeles, California.

**PROOF OF SERVICE**

[ ]    **(BY OVERNIGHT DELIVERY) as follows:** I am "readily familiar" with this firm's practice of collection and processing correspondence for overnight delivery. Under that practice, overnight packages are enclosed in a sealed envelope with a packing slip attached thereto fully prepaid. The packages are picked up by the carrier at our offices or delivered by our office to a designated collection site.

     I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     Executed on **March 23, 2012** at Los Angeles, California.

   La Donna R. Mc Duffie
     Type or Print Name                  Signature

ARIAS OZZELLO & GIGNAC LLP

**PROOF OF SERVICE**